Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re | Case No. 22-30770-pcm13 |
|---|---|
| MICHAEL BUU TRUONG, | |
| Debtor. | MEMORANDUM DECISION[1] |

This matter came before the court on objections to confirmation of a proposed chapter 13[2] plan filed by Kenneth and Echo Merrell (referred to collectively as "the Merrells") and Mark Crandall ("Crandall") of the Crandall Group, a broker with John L. Scott Oregon, LLC. The debtor, Michael Buu Truong ("Truong"), included in his chapter 13 plan a proposal to reject a real estate contract. The primary issue presented is whether a contract is executory when, before the bankruptcy petition date, an arbitrator has circulated a written decision but has not issued a

---

[1] This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases. It may, however, be cited for whatever persuasive value it may have.

[2] Unless otherwise noted, all references to chapters and sections are to the Bankruptcy Code, 11 U.S.C. § 101, et. seq.

Page 1 – MEMORANDUM DECISION

document that complies with the applicable rules governing arbitration awards. For the reasons set forth below, the court finds that the contract at issue remained executory on the bankruptcy petition date. However, Truong failed to carry his burden to show that he met the applicable standard for rejection of the contract. As a result, the court will deny confirmation of Truong's proposed chapter 13 plan.

## PROCEDURAL BACKGROUND

Truong filed a chapter 13 petition on May 12, 2022. In his proposed plan, Truong moved to reject a real estate purchase and sale agreement with the Merrells ("the Contract") as an executory contract under § 365.[3] The Merrells objected to the plan on the basis that the Contract is not subject to rejection as an executory contract and the plan was filed in bad faith. Crandall objected to the plan on various grounds, including feasibility. The court overruled the Merrells' bad faith objection and the specific objections to feasibility raised by Crandall at the conclusion of an evidentiary hearing. The court took under advisement the question of whether the Contract was an executory contract subject to rejection and indicated in its record of proceeding that it would defer a final ruling on feasibility until its decision resolving the matters taken under advisement. Because the court denies confirmation on other grounds, it does not need to address the feasibility issue.

## FACTS

Truong owns two properties on Shadypeak Lane. One of the properties is a single-family home ("the Airbnb Property") and the other is a vacant lot ("the Vacant Lot") (sometimes

---

[3] ECF No. 16. Truong also moved to reject other contracts in his proposed plan: (1) contracts, the existence of which he disputes, with John L. Scott Oregon, LLC, the Crandall Group, and any of their individual representatives; and (2) a contract for the sale of a vacant lot, which is discussed below. No party objected to rejection of those contracts.

referred to collectively as "the Properties"). Truong used the Airbnb Property primarily as a vacation rental home through the booking services of Airbnb and VRBO. Jeff Roberts ("Roberts"), an agent of the Crandall Group, represented Truong in a real estate transaction in 2011. Between 2015 and 2021, Roberts brought several buyers interested in purchasing the Properties to Truong. Roberts was the exclusive agent bringing potential buyers to Truong.

In February 2021, Roberts contacted Truong regarding the Merrells' interest in the Properties. The parties began negotiating the purchase and sale of the Properties shortly afterward. Truong maintains that, due to their history of dealings, he believed Roberts was representing him in the transaction. According to Roberts and the draft purchase agreements, Roberts represented only the Merrells. After a series of exchanges, the Merrells agreed to purchase the Airbnb Property for $1,150,000 and the Vacant Lot for $440,000. The sale of the Vacant Lot was contingent on the sale of the Airbnb Property.

The parties finalized the Contract a few weeks after reaching an agreement for the purchase of the Airbnb Property. The parties were to sign the Contract no later than 5:00 p.m. on April 1, 2021. The Contract required the Merrells to sign a promissory note for $15,000 as earnest money. The promissory note was payable at the end of the inspection period, and the funds were to be held in escrow until closing. The remaining $1,135,000 of the purchase price was to be paid through conventional financing and was due upon delivery of the deed.[4] Before closing, the Merrells were to provide Truong with a written transition plan for the vacation rental home business. On March 28, 2021, the Merrells signed a deed of trust with the lender. On March 29, 2021, the Merrells signed the escrow agreement. The Merrells signed the Contract on

---

[4] Ex. B, at 1-2.

Page 3 – MEMORANDUM DECISION

Case 22-30770-pcm13    Doc 62    Filed 12/15/22

March 31, 2021. Truong signed the Contract shortly after the 5:00 p.m. deadline on April 1, 2021. The closing was scheduled for June 1, 2021, at 5:00 p.m.

Allegedly still believing Roberts to be his agent, Truong contacted Roberts in mid-May requesting an addendum to the contract regarding the Vacant Lot. In response, Roberts informed Truong he was not representing him in the transactions with the Merrells. Although the Contract stated it several times, Truong claims that was the first time he became aware that Roberts was not his agent.[5] Truong then reported to the Merrells that he was having second thoughts regarding the Contract. Truong requested a postponement of the closing date to obtain representation, which the Merrells denied.

In anticipation of closing, the Merrells deposited into escrow the down payment, the promissory note for the earnest money, the adjustable rate note, and the deed of trust.[6] On June 1, 2021, Truong communicated his intent to rescind the Contract through a letter from his attorney to the Merrells. The letter stated the Contract was invalid because Truong executed it after the 5:00 p.m. deadline on April 1. Truong did not deposit the deed into escrow on the closing date. According to the dispute resolution procedures provided for in the Contract, the Merrells submitted their claims arising from the aborted sale to arbitration on June 9, 2021.[7]

After the arbitration hearing concluded, the arbitrator sent his decision to the parties via email on April 27, 2022. The email attached a written document captioned "Arbitration Award" at the top center (the "Decision").[8] The Decision stated that the Merrells were entitled to specific

---

[5] Ex. B, at 1, 13.

[6] Ex. 104.

[7] Ex. 109.

[8] Ex. 111, at 2.

performance of the Contract, money damages, and costs.  In the email, the arbitrator informed the parties that it would be "necessary to have a conference call to discuss the form of the judgment and what it will contain."[9]  Truong's chapter 13 petition stayed further proceedings before the conference call could take place.

To determine whether Truong may reject the Contract as an executory contract, the court considers (1) the legal effect of the Decision, (2) the executory nature of the Contract, and (3) whether rejection is appropriate under the business judgment rule.[10]

ANALYSIS

Section 365 allows a debtor to assume or reject an executory contract as part of their chapter 13 plan.  Although the Code does not define the term "executory contract," it is generally understood to be a contract in which performance remains due by both parties.  The Countryman definition, as adopted by the Ninth Circuit, provides that "[a] contract is executory where the obligations 'of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'"[11]  Whether a contract is executory is a factual determination and a

---

[9]   Ex. 111, at 1.

[10]   Truong argued at the hearing before this court that the Contract was invalid because he signed it after the 5:00 p.m. deadline.  He also asserted that the Merrells never provided him with a written transition plan, so he was excused from further performance.  Truong raised those arguments in the arbitration, and the arbitrator rejected them.  The Merrells assert Truong is barred from relitigating those issues before this court.  A bankruptcy court should not resolve questions involving the validity of a contract when deciding a motion to reject under § 365.  In re G.I. Indus., Inc., 204 F.3d 1276, 1282 (9th Cir. 2000).  Therefore, the court will not decide whether the Contract is valid or the extent to which Truong is bound by the arbitrator's rejection of his arguments.

[11]   In re Pac. Express, Inc., 780 F.2d 1482, 1487 (9th Cir. 1986) (quoting Vern Countryman, Executory Contracts in Bankruptcy: Part 1, 57 Minn. L. Rev. 439, 460 (1973)).

question of federal law, but state law is instructive in determining the materiality of remaining obligations.[12]

Bankruptcy courts across circuits uniformly hold that, once a contract has been reduced to a judgment for specific performance, the contract is no longer executory.[13] This is commonly referred to as the "judgment rule." Under the judgment rule, "courts generally reason that once specific performance is decreed, the rights and obligations of the parties become defined and governed by the decree rather than by the contract."[14] Unlike failing to act under a contractual obligation, state law typically provides mechanisms to "act in the debtor's stead" if they fail to comply with a court order.[15] The Merrells assert that the Decision is the equivalent of a judgment.

Oregon law permits a party to an arbitration proceeding to seek confirmation of the award with the circuit court after an arbitration award has been rendered. Once an order to confirm an award is granted, the judgment carries the same weight and right to enforcement as any other judgment in a civil action.[16] The Decision was not submitted to nor confirmed by the circuit court before Truong filed his chapter 13 petition. Citing In re Ter Bush,[17] the Merrells contend

---

[12] In re Qintex Ent., Inc., 950 F.2d 1492, 1495 (9th Cir. 1991); In re Eutsler, 585 B.R. 231, 236 (9th Cir. BAP 2017) ("[T]he materiality of the parties' remaining obligations depends on whether, under applicable state law, one party's nonperformance would excuse the other party's obligation to perform.").

[13] See In re Confer, No. EC-21-1140, 2022 Bankr. LEXIS 631, at *13 (9th Cir. BAP Mar. 10, 2022) (citing cases from the 1st, 2nd, 3rd, 4th, 5th, 6th, 8th, 9th, 10th, and 11th circuits).

[14] Id.

[15] Id. at *13-14.

[16] Or. Rev. Stat. § 36.715 (2022).

[17] 273 B.R. 625 (Bankr. S.D. Cal. 2002).

that the Decision granting specific performance renders the Contract non-executory even though it was unconfirmed. Relying on California law, the bankruptcy court in Ter Bush held that an unconfirmed arbitration award is equivalent to a final judgment, noting "[o]nce a valid award is made by the arbitrator, it is conclusive on matters of fact and law and all matters in the award are thereafter res judicata."[18] The rule announced in Ter Bush is dependent on the existence of a valid arbitration award. For the reasons explained below, the court concludes that the Decision does not qualify as a valid arbitration award.[19]

## I. The Decision Does Not Qualify as an Award

The Merrells and Truong agreed to submit disputes arising out of the Contract to "final and binding" arbitration conducted by the Arbitration Service of Portland ("the ASP").[20] When Truong failed to sign the deed on the closing date, the Merrells submitted the dispute to the ASP.[21] At the arbitration hearing, which lasted several days, both parties were represented by counsel, presented evidence, testified, and had the opportunity to raise affirmative defenses. After the arbitration proceedings concluded, the arbitrator sent the Decision to the parties via email, stating, "[p]lease find the decision in this case."[22]

---

[18] Id. at 628 (alteration in original) (quoting Thibodeau v. Crum, 6 Cal. Rptr. 2d 27, 33 (Cal. Ct. App. 1992)).

[19] Truong argues that Oregon law is materially different from California law, a contention the Merrells dispute. Because the Decision does not qualify as an award, the court need not decide whether an unconfirmed arbitration award is equivalent to a final judgment under Oregon law.

[20] Ex. B, at 10.

[21] Ex. 109.

[22] Ex. 111, at 1.

Oregon adopted a version of the Uniform Arbitration Act ("the OUAA"), codified in sections 36.00 to 36.740 of the Oregon Revised Statutes. ORS 36.610 provides that parties to an arbitration agreement or proceeding may waive or vary the effect of the OUAA to the extent permitted by law. In the Contract, the parties agreed that all claims "shall be submitted to final and binding arbitration in accordance with the then-existing rules of ASP."[23] The ASP promulgated a set of rules to govern arbitrations administered through the organization. Although the rules are subject to the OUAA and the Federal Arbitration Act, ASP rule 41 provides that the ASP rules govern in the event of a conflict with either statute. Therefore, the court turns to the ASP's rules to determine whether the Decision qualifies as an award.[24]

ASP rule 31 provides for the form and delivery of an award after the conclusion of an arbitration hearing. The rule reads:

> The award shall be in writing and signed by the sole arbitrator or by a majority of the arbitrators. A signed original of the award shall be served upon each party and a copy of the award shall be filed with ASP. If the determination of an award of attorney fees will require a determination pursuant to Rule 34, the arbitrator(s) may render a preliminary award, the body of which can be incorporated into a final award that includes the allowance of costs and attorney fees. If the award is for money, the form of the award shall comply with the requirements of ORS 36.685, which requires the same information itemized in ORS 18.042 for judgments that include the payment of money.

The Decision does not comply with the requirements of ASP rule 31. First, an award must be in writing and signed by the arbitrator. The Decision is in writing, but it is not signed by the

---

[23] Ex. B, at 10.

[24] The court took judicial notice of the ASP rules with the consent of the parties.

arbitrator.[25] Second, the arbitrator did not file the Decision with the ASP. Lastly, the Decision does not comply with the requirements of ORS 36.685(1), which provides that an award for money damages must include a separate section meeting the requirements for money judgments in civil actions under ORS 18.042.

Although the Decision appears to address all the substantive issues raised by the parties during the arbitration, the arbitrator requested the parties appear for a conference call "to discuss the form of the judgment and what it will contain."[26] Of course, an arbitrator does not issue a judgment. The court suspects that the arbitrator inadvertently substituted the word "judgment" for "award," and the arbitrator's request suggests that the Decision was a work in progress, akin to intended findings of facts and conclusions of law, not an arbitration award eligible for confirmation by a court.

The parties do not discuss, and the court was unable to find, any cases that directly address whether an arbitration decision that fails to qualify as an award should nevertheless be treated as equivalent to a judgment. The only case the court could find that was somewhat analogous was a letter decision from an Oregon Circuit Court in Donegan v. Anderson.[27] The court in Donegan found that an arbitrator's decision that did not meet the requirements of a final award under the ASP rules was not eligible for court confirmation. In Donegan, the arbitrator rendered a decision that included a money award but did not comply with the requirements for

---

[25]   The Merrells argue that the arbitrator's email with the name of the arbitrator at the end constitutes a signature. The ASP rules differ from ORS 36.685(1), which allows *authentication or signature*. The arbitrator's email may be sufficient to authenticate the Decision, but it does not constitute a signature under ASP rules.

[26]   Ex. 111, at 1.

[27]   No. 0906-08960, 2009 WL 8478236 (Or. Cir. Ct. Sept. 8, 2009).

Page 9 – MEMORANDUM DECISION

money awards under the OUAA and ASP rules. The plaintiffs argued that under the OUAA, the term "an award" included any award, even one failing to comply with the requirements of ORS 36.685. The court in Donegan rejected the plaintiffs' argument, concluding that the term "award," as used in the OUAA, applied to "an award that is final under the applicable arbitration rules and that complies with the requirements of ORS 36.685 for a money award."[28] Because the arbitrator's decision did not comply with ORS 36.685, the circuit court determined it lacked jurisdiction to confirm the award as a judgment. Donegan offers some guidance in this case because the Decision similarly does not comply with ORS 36.685.

The court is mindful of the competing policy interests presented by this case. On the one hand, there is strong federal policy favoring the resolution of disputes through arbitration. On the other hand, having bright lines for finality in judgments and arbitration awards alike is important. A host of significant implications arise when a judgment or award is rendered. Categorizing a decision that is almost an award as such is tempting, but doing so may lead to procedural uncertainty in future cases. For the reasons stated above, the court concludes that the Decision should not be treated as an arbitration award for purposes of the judgment rule.

II. The Contract Is Executory

The Merrells argue that, even if the Decision is not the equivalent of a judgment, the Contract is not executory because they fully performed by signing all the necessary documents, depositing the down payment in escrow, and obtaining financing for the balance of the purchase price. The Merrells maintain, and Truong does not dispute, that their lender was poised to fund the escrow account with the remaining purchase price when Truong signed the deed. The problem with the Merrells' argument is that it is irreconcilable with Ninth Circuit caselaw.

---

[28] Id.

Applying the Countryman definition, the Ninth Circuit has held that merely tendering performance is insufficient to render a purchase and sale agreement non-executory.[29] In In re Alexander, the debtor and a buyer entered into a prepetition contract for the purchase and sale of real property. The buyer deposited funds into escrow and had a bank loan commitment in place for the remaining purchase price. When the debtor refused to convey title, the buyer initiated a state court lawsuit seeking specific performance of the contract. The debtor's bankruptcy petition stayed the state court action. Faced with the question of whether performance remained due by the buyer, the Ninth Circuit held that there must be "[p]erformance or the rendering of performance, not just tender of performance," for a contract to be non-executory.[30] The court in Alexander noted that the debtor's failure to convey title or the buyer's failure to pay the purchase price "would have constituted a material breach."[31]

The Merrells' argument is flawed for at least two reasons. First, the Merrells maintained control over their lender's actions until Truong completed his performance. In an email exchange between the escrow agent and the Merrells' lender, the lender indicated it would wait until Truong signed the deed before transferring the funds to escrow.[32] The lender never deposited the funds into escrow because Truong never signed the deed. In short, Truong's failure to sign the deed on the closing date was a material breach, excusing the Merrells' obligation to pay the remaining purchase price. Second, the Merrells could have withdrawn their

---

[29] In re Alexander, 670 F.2d 885, 887 (9th Cir. 1982); see also In re Aslan, 909 F.2d 367, 369-70 (9th Cir. 1990).

[30] In re Alexander, 670 F.2d at 887.

[31] Id.

[32] Ex. 107.

authorization to the lender to fund at any time, which would have excused Truong's performance.[33]

Seeking to distinguish this case from Alexander, the Merrells cite In re Hertz.[34] The Merrells' reliance on Hertz is misplaced because the facts of that case are distinguishable from those presented in this case. In Hertz, a trust was responsible for funding the escrow account with the full purchase price, which it had done at the time the debtor sought to reject the contract. Additionally, the escrow agreement provided that escrow would close without further instruction. The court held that the contract was not executory because the trust had fully performed by depositing the full purchase price into escrow, which would close without further action or authorization.[35] In this case, although the Merrells had obtained financing, their lender had not rendered performance by placing the remaining purchase price funds in escrow.

For the reasons stated above, the court finds the Contract remains executory and subject to rejection by Truong.

III. Truong Has not Shown that Rejection Is Warranted

Truong bears the burden of proving that the court should confirm his chapter 13 plan, which includes a proposal to reject the Contract.[36] The Merrells argue that Truong has not met his burden of proof. The court agrees.

---

[33] Ex. B, at 7.

[34] 536 B.R. 434 (Bankr. C.D. Cal. 2015).

[35] Id. at 441.

[36] E.g., In re Lavilla, 425 B.R. 572, 576 (Bankr. E.D. Cal. 2010) (a debtor bears "the burden of proof on each element of confirmation by a preponderance of the evidence") (citing In re Arnold & Baker Farms, 177 B.R. 648, 654 (9th Cir. BAP 1994), aff'd, 85 F.3d 1415 (9th Cir. 1996), cert. denied, 519 U.S. 1054 (1997)).

The Supreme Court has held that the purpose of § 365 is to enable a debtor "upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward."[37] If the contract would not benefit the estate, the debtor should reject the contract.[38] The rejection of an executory contract is subject to court approval under the "business judgment" rule.[39] When a debtor seeks to reject an executory contract, "bankruptcy courts should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate."[40] A bankruptcy court should approve rejection unless the debtor's reasoning behind rejection "is so manifestly unreasonable that it could not be based on sound business judgment, but only bad faith, or whim or caprice."[41]

Truong did not articulate a business reason to reject the Contract or supply any evidence that supports the conclusion that he was exercising sound business judgment when he made his decision. In other words, Truong failed to provide the court with an explanation to which it could apply the business judgment rule. The Merrells pointed out during the hearing that the net proceeds from the sale of the Airbnb Property would provide the estate with substantial funds and avoid the resulting rejection claim, which has the potential to be quite large. When confronted with the potential that the benefit to the estate of assuming the Contract exceeds the cost of rejection, Truong merely stated, "I would like to know what the total number is before I

---

[37] Mission Prod. Holdings, Inc. v. Tempnology, LLC, 139 S. Ct. 1652, 1658 (2019).

[38] Id.

[39] Id.

[40] In re Pomona Valley Med. Grp., Inc., 476 F.3d 665, 670 (9th Cir. 2007).

[41] Id.

decide what to do with my assets." Truong's statement does nothing to shed light on the basis for his decision to reject the Contract. It is not the court's duty to comb the record to try and ascertain Truong's motivation for seeking rejection. Even if it was appropriate for the court to do so, and it is not, the court is at a complete loss as to what business rationale Truong may have for rejecting the Contract. Truong failed to meet his burden to show that the court should confirm his chapter 13 plan, which requests that the court approve rejection of the Contract under the business judgment rule.

## CONCLUSION

The court will enter an order denying confirmation of the plan and allowing Truong 28 days to file an amended plan.

###